{¶ 1} Relator, Lynnhaven XIV, LLC ("Lynnhaven"), commenced this original action requesting a writ of mandamus that orders respondent, Administrator of the Bureau of Workers' Compensation ("bureau"), to vacate his order (1) finding Lynnhaven is the successor in interest to University Manor Healthcare Center ("University Manor"), and (2) upholding the transfer of University Manor's experience to Lynnhaven for purposes of determining Lynnhaven's insurance rate.
 {¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In his decision, the magistrate determined the bureau did not abuse its discretion in concluding Lynnhaven is the successor in interest to University Manor.
 {¶ 3} Lynnhaven has filed objections to the magistrate's conclusions of law, rearguing those matters adequately addressed in the magistrate's decision. For the reasons set forth in the decision, we overrule Lynnhaven's objections.
 {¶ 4} As the magistrate explained, R.C. 4123.32(D) states "the administrator may require that if any employer transfers his business in whole or in part or otherwise reorganizes the business, the successor in interest shall assume * * * the employer's account and shall continue the payment of all contributions due under this chapter[.]" Combining that statutory provision with Ohio Adm. Code 4123-17-02(B) and State ex rel. Lake Erie Constr. Co., v. Indus. Comm. (1991), 62 Ohio St.3d 81, the magistrate concluded that the statutory language does not depend on the common law definition of successor in interest. Rather, according to Lake Erie, "[b]oth sections imply that a successor in interest, for workers' compensation purposes, is simply a transferee of a business in whole or in part." Id. at 83-84. While Lynnhaven noted that here it leased rather than purchased the facility at issue, the magistrate appropriately found that distinction to be unpersuasive.
 {¶ 5} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; writ denied.
LAZARUS and KLATT, JJ., concur.
 IN MANDAMUS {¶ 1} In this original action, relator, Lynnhaven XIV, LLC ("Lynnhaven"), requests a writ of mandamus ordering respondent, Administrator of the Ohio Bureau of Workers' Compensation ("bureau"), to vacate his order finding that Lynnhaven is the successor in interest to University Manor Healthcare Center ("University Manor") thus upholding the transfer of University Manor's experience to Lynnhaven for purposes of determining Lynnhaven's insurance rate.
Findings of Fact:
 {¶ 2} 1. On August 10, 1997, Lynnhaven entered into a sublease agreement with University Manor whereby Lynnhaven agreed to lease from University Manor a 208-bed nursing home facility. The lease was for a ten-year period with an option to renew the lease or to purchase the facility prior to the expiration of the ten-year term.
 {¶ 3} 2. Lynnhaven agreed to retain all University Manor employees covered by a collective bargaining agreement between the union and University Manor. However, Lynnhaven did not retain the key management personnel. Lynnhaven replaced the facilities administrator, medical director, business office manger, assistant administrator, director of nursing, marketing and sales director, accounts receivable, environmental services, assistant director of nursing, and other administrative positions.
 {¶ 4} 3. Lynnhaven hired a safety officer to administer its policies regarding accident prevention, fire protection, and work place safety.
 {¶ 5} 4. Since August 1997, Lynnhaven has improved the claims experience of the nursing home facility.
 {¶ 6} 5. In December 1998, the bureau conducted an audit which resulted in Lynnhaven being notified that University Manor's experience was being transferred to Lynnhaven. In January 1999, Lynnhaven filed a protest with the bureau challenging the experience transfer.
 {¶ 7} 6. On May 23, 2000, Lynnhaven's protest was heard by the bureau's three-member adjudicating committee. Following the hearing, the adjudicating committee issued an order denying Lynnhaven's protest. The order states:
 {¶ 8} "At hearing, the employer testified that Lynnhaven, a sister company to Hubbard Health Care Management (hereinafter `Hubbard') based in North Carolina, is a nursing home facility located in Cleveland, Ohio. Hubbard administers Lynnhaven and several other nursing home facilities.
 {¶ 9} "The employer stated that on August 1, 1997, Lynnhaven entered into a Sub-Lease Agreement, whereby Lynnhaven agreed to lease from University Manor Health Care Center, Inc. (hereinafter `University Manor'), the facility at issue. The lease was for a ten year period with an option to purchase prior to the expiration of the initial term on the lease. The lease also provides that Lynnhaven may renew the lease prior to its expiration in 2007.
 {¶ 10} "According to the employer, the Bureau of Workers' Compensation conducted an audit of the premises in December, 1998, which resulted in no findings. Thereafter, Lynnhaven was notified that the Bureau considered Lynnhaven to be a `successor' of University Manor and that the experience of University Manor was being transferred to Lynnhaven.
 {¶ 11} "The employer testified that due to the unique nature of the business, Lynnhaven was precluded from `shutting its doors even for a single day.' For the same reason, they argue, it was simply impossible to replace all of the employees after taking over the business. Moreover, they (the employer) were forced to accept all of the University Manor employees covered by the collective bargaining agreement. Those employees constituted two-thirds of the work force employed at the facility.
 {¶ 12} "The employer emphasized that while they were required to accept the union employees, key management personnel were not retained. The employer testified that among those employees replaced were the administrator, medical director, business office manager, assistant administrator, director of nursing of nursing, marketing and sales director, accounts receivable, environment services, assistant director of nursing, and numerous other administrative positions. Among those also hired was a safety officer, who was charged with administering and coordinating programs; addressing accident prevention; fire protection; and general issues of workplace safety.
 {¶ 13} "The employer presented evidence at hearing which indicated that since taking over the facility in August, 1997, there have been only two lost time claims. Both occurred in 1998. In 1997 and 1999, Lynnhaven had no lost time claims. The employer stated that under the management of the predecessor, from 1992 until August, 1997, there were 24 lost time claims. The employer also presented evidence which demonstrated that the total current claims costs for Lynnhaven is less than any single year claims cost under University Manor. The employer argued that University Manor's past experience has not proved to be an accurate predictor of Lynnhaven's performance, so principles of successorship do not apply.
 {¶ 14} "The employer argued that when combining the operative language of Revised Code Section 4123.32 with the language of Ohio Administrative Code Rule 4123-17-02(B)(3) and (4), the Bureau is only authorized to make a successorship determination where the purchaser has in some manner `succeeded' the seller. The employer maintained that a review of the facts and the applicable law will lead to the conclusion that Lynnhaven is not a successor to University Manor.
 {¶ 15} "The employer emphasized that in the present case, there was no transfer of assets, but merely an acquisition of a lease for a period of 10 years. Finally, the employer argued that there was no transfer of assets; no agreement that Lynnhaven would assume University Manor's debts; no merger; and that the lessee was not a continuation of the lessor.
 {¶ 16} "The Bureau's representative stated that the transaction between University Manor and Lynnhaven was a transfer. He stated that in a questionnaire dated December 8, 1997, the successor indicated they were subleasing the operation and that all employees of the predecessor had been retained. The questionnaire also indicated that there had been no change in the operation of the facility and all patient contracts had been assigned to the successor.
 {¶ 17} "He also stated that on the predecessor payroll report received February 17, 1998, a cancellation of policy 789874 was requested and processed. He also pointed out that on a BWC audit dated January 21, 1999, was the notation that `the facility was sold August 1997.' He explained that the sublease agreement states, `Sub-Lessee hereby agrees and covenants to keep and maintain the premises as a 208 bed nursing facility [3.1(d)].' He emphasized that the agreement states that `The Premises shall be occupied and used exclusively as a Nursing Facility [9.1(b)].'
 {¶ 18} "The Bureau's representative concluded by stating that because the operations, employees, and facilities have remained continuous from predecessor to successor, the experience transfer was proper.
 {¶ 19} "After weighing the evidence and testimony presented at hearing, it is the DECISION of the Adjudicating Committee to deny the employer's appeal and to uphold the transfer of experience.
 {¶ 20} "The Committee finds O.R.C. Sec. 4123.32(D) to be controlling and compelling. That statute provides in pertinent part: ' the administrator may require that if any employer transfers his business in whole or in part, or otherwise reorganizes the business, the successor in interest shall assume the employer's account ' (Emphasis added.)
 {¶ 21} "The Committee also finds the reasoning in State ex. rel. Lake Erie Constr. Co. v. Indus. Comm. (1991), 62 Ohio St.3d 81, to be applicable. In Lake Erie, the Court expressly held that `a successor in interest, for workers' compensation purposes, is simply a transferee of a business in whole or in part.' (Emphasis added.)
 {¶ 22} "In the facts before us, the lessors operated a nursing care facility, and the lessees continue to operate a nursing facility with all of the bargaining unit employees. The industrial pursuit remains the same and there is no genuine question that the business was transferred.
 {¶ 23} "For the foregoing reasons, the Adjudicating Committee upholds the transfer of experience."
 {¶ 24} 7. Lynnhaven administratively appealed the decision of the adjudicating committee to the administrator's designee. Following an April 5, 2001 hearing, the administrator's designee issued an order affirming the decision of the adjudicating committee.
 {¶ 25} 8. On January 9, 2002, relator, Lynnhaven, filed this mandamus action.
Conclusions of Law:
 {¶ 26} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 27} R.C. 4123.32 states in part:
 {¶ 28} "The administrator of workers' compensation, with the advise and consent of the workers' compensation oversight commission, shall adopt rules with respect to the collection, maintenance, and disbursements of the state insurance fund including all of the following:
 {¶ 29} "* * *
 {¶ 30} "(D) Such special rules as the administrator considers necessary to safeguard the fund and that are just in the circumstances, covering the rates to be applied where one employer takes over the occupation or industry of another or where an employer first makes application for state insurance, and the administrator may require that if any employer transfers his business in whole or in part or otherwise reorganizes the business, the successor in interest shall assume, in proportion to the extent of the transfer, as determined by the administrator, the employer's account and shall continue the payment of all contributions due under this chapter."
 {¶ 31} Ohio Adm. Code 4123-17-02(B) is captioned "Succeeding employers — experience." It states in part:
 {¶ 32} "(3) Where a legal entity having an established coverage or having had experience in the most recent experience period wholly succeeds one or more legal entities having established coverage or having had experience in the most recent experience period and at least one of the entities involved has a merit rating experience, the experience of all the involved entities shall be combined to establish the rate of the successor.
 {¶ 33} "(4) Where a legal entity succeeds in the operation of a portion of a business of one or more legal entities having an established coverage or having had experience in the most recent experience period, the successor's rate shall be based on the predecessor's experience within the most recent experience period, pertaining to the portion of the business acquired by the successor."
 {¶ 34} Pertinent here is State ex rel. Lake Erie Constr. Co. v. Indus. Comm. (1991), 62 Ohio St.3d 81. Paul E. Bleile Company ("Bleile"), incorporated in 1957, constructed highway guardrails, installed signs and landscaped roadways. Lake Erie Construction Company ("Lake Erie") did similar work.
 {¶ 35} In April 1983, Bleile's board of directors decided to cease competitive bidding on government contracts as of June 1, 1983. The board's minutes indicated they were negotiating to sell Bleile's tools and equipment to Lake Erie and that Lake Erie had already agreed to continue the employment of all Bleile employees, to assume Bleile's leases, and to purchase its inventory and equipment. The minutes also indicated there were plans for Lake Erie to continue the Bleile profit sharing plan.
 {¶ 36} Bleile stopped competing for new projects as planned. Approximately three weeks into Bleile's final construction project, five Bleile employees died in a plane crash en route to the construction site. Ohio workers' compensation death claims were allowed on behalf of the deceased. Bleile's workers' compensation premium rates increased substantially as a result. Bleile formerly dissolved in 1986.
 {¶ 37} In May 1987, after completion of an audit, the bureau recommended that Bleile's experience rating be combined with Lake Erie's. The bureau's adjudicating committee adopted the recommendation and Lake Erie unsuccessfully appealed to the commission. Lake Erie filed a complaint in mandamus in this court. This court denied the writ and Lake Erie appealed as of right to the Supreme Court of Ohio.
 {¶ 38} The Lake Erie court states:
 {¶ 39} "Appellant [Lake Erie] proposes that (1) it is not Bleile's successor in interest, and (2) it does not meet the common-law criteria for successor liability assumption and, therefore, cannot assume Bleile's rate experience. We disagree.
 {¶ 40} "The current controversy centers on the definition of `successor in interest.' Appellees [bureau and commission] define the term by the statutory language that precedes it — successor in interest being the transferee of a `business in whole or in part.' Appellant responds that R.C. 4123.32 does not define the term and, therefore, under R.C. 1.49, the court must adopt a common-law definition. This argument fails.
 {¶ 41} "We find no evidence in either R.C. 4123.32(D) or Ohio Adm. Code 4121-7-02(B) that `successor in interest' is intended to be the term of art that appellant claims. Both sections imply that a successor in interest, for workers' compensation purposes, is simply a transferee of a business in whole or in part. Presumably, the General Assembly would have expressly set forth a more specialized meaning if that was its intent. Contrary to appellant's representation, there is no need to look beyond these provisions.
 {¶ 42} "Appellant also proposes that the successorship liability principles enunciated in Flaugher v. Cone Automatic Machine Co. (1987),30 Ohio St.3d 60, 30 OBR 165, 507 N.E.2d 331, control the assumption of Bleile's rate experience. Flaugher stated:
 {¶ 43} " `The general rule in products liability is that a successor corporation's amenability to suit will depend on the nature of the transaction which gave rise to the change in ownership. * * * Where the transfer is accomplished by means of a statutory merger or consolidation, the liability of the former corporation will be assumed by the new entity. * * * Where there is merely a sale of a corporation's assets, the buyer corporation is not liable for the seller corporation's tortuous conduct unless one of the following four exceptions applies:
 {¶ 44} " '(1) the buyer expressly or impliedly agrees to assume such liability;
 {¶ 45} " '(2) the transaction amounts to a de facto consolidation or merger;
 {¶ 46} " '(3) the buyer corporation is merely a continuation of the seller corporation; or
 {¶ 47} " '(4) the transaction is entered into fraudulently for the purpose of escaping liability. * * *' (Citations omitted.) Id. at 62, 30 OBR at 167, 507 N.E.2d at 334.
 {¶ 48} "We reject appellant's assertion for several reasons. First, the General Assembly in R.C. 4123.32(D) has already stated the experience-assumption criteria that it wants applied. Second, Flaugher involved products liability and amenability to common-law suit. Third, the criterion of Flaugher that there is `merely a sale of a corporation's assets' does not apply to appellant. Here, in addition to the purchase of the assets, appellant contractually agreed to retain all Bleile employees. Arrangements were also made for a successor profit-sharing plan and there was partial commonality of directors. Accordingly, we find Flaugher inapplicable." Id. at 83-84.
 {¶ 49} Here, Lynnhaven contends that "neither the applicable code sections [Ohio Adm. Code 4123-17-02(B)(3) and (4)] nor common law principles of successorship liability * * * provide for a successorship finding where there is only a leasehold arrangement and not a sale of assets." (Lynnhaven's brief at 10.) According to Lynnhaven, the bureau cannot find it to be a successor in interest because allegedly "it does not fit within the legal framework of a successor." Id.
 {¶ 50} Contrary to Lynnhaven's suggestion, neither R.C. 4123.32 as supplemented by Ohio Adm. Code 4123-17-02(B), nor any case interpreting the same, instructs or holds that there can be no finding of a successor in interest when the facility is leased rather than purchased. Moreover, this magistrate can think of no logical reason why the parties' decision to negotiate a lease rather than a sale would be critical or determinative of the successorship issue. In either event, the transferee of the facility assumes possession and control of the facility.
 {¶ 51} Lynnhaven also misplaces its reliance upon so-called common law principles of successorship liability citing Flaugher v. Cone Automatic Machine Co. (1987), 30 Ohio St.3d 60, a case discussed by the Lake Erie court.
 {¶ 52} Contrary to Lynnhaven's misconception, the Lake Erie court did not incorporate common law successorship liability principles into an R.C. 4123.32(D) determination. Lake Erie, supra.
 {¶ 53} Citing Flaugher, Lynnhaven argues at some length that the transaction at issue did not amount to a de facto consolidation or merger and thus Lynnhaven concludes that there is no successorship liability. (Lynnhaven's brief at 10, fn. 6.) Lynnhaven's argument that there was not a de facto merger is but a thinly veiled invitation that this court reweigh de novo the evidence and facts before the bureau's adjudicating committee and the administrator's designee.
 {¶ 54} The magistrate further notes that Lynnhaven, citing prior written decisions of the adjudicating committee, contends that the bureau failed to follow its own precedent. This contention lacks merit.
 {¶ 55} The bureau is not required by statute or promulgated rule to address its own prior written decisions as precedent in any order determining an employer's protest. Accordingly, relator cannot show a clear legal right in mandamus to a bureau order that addresses or even follows the prior written decisions of the bureau.
 {¶ 56} While the presentation of prior written decisions by a party to a bureau proceeding could conceivably prove instructive or even persuasive to the administrative tribunal, there is no clear legal right in mandamus to have this court review the prior decisions presented to determine whether those decisions support the bureau's order under review here.
 {¶ 57} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.